UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CATHERINE WANKO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:16-cv-02789-TWP-DML |
| | ) |
| BOARD OF TRUSTEES OF INDIANA | ) |
| UNIVERSITY, | ) |

**ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S OBJECTION TO THE MAGISTRATE JUDGE'S ORDER**

This matter is before the Court on several pending motions. Defendant Board of Trustees of Indiana University's ("Indiana University") has filed a Motion for Summary Judgment (Filing No. 87). Plaintiff Catherine Wanko's ("Wanko") has filed a Corrected Motion to Defer or Deny Summary Judgment and/or Time to Conduct Discovery, and/or For Any Other Relief Pursuant to Rule 56(d) of the Federal Rules of Civil Procedure (Filing No. 92) (the "Rule 56(d) Motion"). Also before the Court is Wanko's Objection to the Magistrate Order Granting in Part, Denying in Part an Extension of Discovery and Order Denying the Motion to Compel, requesting that Indiana University provide official student records identified by students' names. (Filing No. 83.) For the reasons that follow, the Court **overrules** Wanko's Objection, **denies** her Rule 56(d) Motion, and **grants** Indiana University's Motion for Summary Judgment.

## I.  BACKGROUND

The following facts are undisputed. Plaintiff Wanko is an African-American and naturalized United States' citizen, originally from Cameroon. (Filing No. 28 at 2.) In August 2014, Wanko enrolled as a dental student at Indiana University School of Dentistry ("IUSD"). *Id.*

at 3. At all times during her enrollment at IUSD, it was required that a student maintain at least a 2.0 cumulative grade point average to be eligible for promotion. (Filing No. 88-1 at 1.)

During Wanko's first year, the 2014-2015 school year, she failed two courses –Removable Prosthodontics ("RP") and Single Tooth Indirect Restorations ("STI"). *Id.* at 2. Because she failed two courses, the Progress Committee reviewed Wanko's advancement and directed her to remediate RP in the early summer of 2015, and to retake STI when it was next offered, in the spring of 2016. *Id.* Wanko attempted to remediate RP in early summer 2015, during which time her STI failing grade was categorized as incomplete. *Id.* If Wanko successfully remediated RP, she would then qualify to move to D-2 (the second year curriculum) but would still have to retake STI in the spring of 2016 while doing her second year program. Upon successfully passing STI, her incomplete grade would convert to a C-.

According to the school's policies and procedures, to successfully remediate a course, a student must pass the course with a score deemed acceptable by the course director for a particular course. Dr. Steven Haug, the course director for RP, defined a passing attempt to be a score of 80% or better on the remediation examination. (Filing No. 88-2 at 1.) Eight students took the RP remediation examination, and each were required to score at least 80%. *Id.* at 2. Wanko was the only student of the eight to score below 80%, receiving a score of 71%. Of the eight students, five were Caucasian, two were African-American, and one was Hispanic. (Filing No. 88-1 at 3.) Additionally, only two students in Wanko's class failed both RP and STI during the 2014-2015 school year, including Wanko. *Id.* The other student was also an African-American female. Because the other student successfully remediated RP, in the summer of 2015, with a score of over 80%, she was eligible for promotion to the second year. *Id.* No Caucasian students failed or received an incomplete in STI in the spring of 2015; therefore, no Caucasian students were required

to remediate STI during the relevant time period. Wanko earned multiple C's and C- grades, and was required to repeat the first year curriculum. *Id.* at 4. Wanko failed STI a second time in the spring of 2016.

## II. LEGAL STANDARD

### A. Summary Judgment

The purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 106 S.Ct. 1348 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 489-90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of a claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citation and internal quotations omitted). Indeed, a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) ("these are jobs for a factfinder"); *Hemsworth*,

476 F.3d at 490.  Instead, when ruling on a summary judgment motion, a court's responsibility is to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial.  *Id*.

### B. Rule 72(a)

A district court may refer for decision a non-dispositive pretrial motion to a magistrate judge under Federal Rule of Civil Procedure 72(a).  Rule 72(a) provides:

> When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision.  A party may serve and file objections to the order within 14 days after being served with a copy.  A party may not assign as error a defect in the order not timely objected to.  The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.

Fed. R. Civ. P. 72(a).  After reviewing objections to a magistrate judge's order, the district court will modify or set aside the order only if it is clearly erroneous or contrary to law.  The clear error standard is highly deferential, permitting reversal only when the district court "is left with the definite and firm conviction that a mistake has been made."  *Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 943 (7th Cir. 1997).

### C. Motion under Rule 56(d)

Rule 56(d) states that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer the considering motion or deny it; (2) allow time to obtain affidavits or declarations or take discovery; or (3) issue any other appropriate order."[1]  "A party invoking its protections must do so in good

---

[1] On December 1, 2010, the Federal Rules of Civil Procedure were amended.  On that date, the current Rule 56(d) became effective.  Prior to that date, the substance of current Rule 56(d) was contained in the former Rule 56(f).  Many of the authorities cited in this opinion pre-date the current Rule 56(d).  However, the standards applied to Rule 56(f) apply in equal force to Rule 56(d).

4

faith by affirmatively demonstrating *why he cannot respond to a movant's affidavits* and how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact." *Korf v. Ball State Univ.*, 726 F.2d 1222, 1230 (7th Cir. 1984) (quoting *Lamb's Patio Theatre v. Universal Film Exchs.*, 582 F.2d 1068, 1071 (7th Cir. 1978) (emphasis added)). A party seeking protection under Rule 56(d) must make a good faith showing that it cannot respond to the movant's affidavits. *Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1058 n.5 (7th Cir. 2000). This requires an affidavit from the nonmovant identifying the material facts that it anticipates discovering. *See Grundstat v. Ritt*, 166 F.3d 867, 873 (7th Cir. 1999) (finding vague assertions that discovery would develop genuine issues of material fact insufficient to grant continuance).

### III. DISCUSSION

The Court will first address Wanko's objection to the Magistrate Judge's discovery ruling and her Rule 56(d) Motion before addressing Indiana University's summary judgment motion.

**A.     Objection to the Magistrate Judge's Order**

On November 27, 2017, Magistrate Judge Debra McVicker Lynch (the "Magistrate Judge") ruled against Wanko on her oral motion to compel during a telephonic discovery conference. ([Filing No. 68](#).) Following the discovery conference, Wanko filed a written motion to compel the same materials, on November 30, 2017. ([Filing No. 70](#).) On December 22, 2017, the Magistrate Judge again denied Wanko's discovery request. ([Filing No. 81](#).) On January 5, 2018, Wanko filed an objection to the Magistrate Judge's discovery ruling which denied Wanko's request to receive student records pertaining to the grades for the 106 students in her graduating class, actual grade transcripts for every class semester for each student, and each student's admission records to correspond with the demographic or race data. ([Filing No. 83 at 2](#).) The

Magistrate Judge denied Wanko this information, finding that Indiana University produced the information requested by Wanko in a de-identified form pursuant to the Family Educational Rights and Privacy Act of 1974 ("FERPA"). In particular, the ruling states the following:

> The School of Dentistry produced information requested by Ms. Wanko in a de-identified form. It culled records and prepared spreadsheets revealing the following information about every other student in the same graduating class as Ms. Wanko (106 students): their grades in the courses; their overall GPA; and their gender and race. The plaintiff received the grades data/GPA/race information for every student who repeated the RP course, as she did. For the STI class, the defendant also provided for each student the grades earned/assigned for tests and quizzes and other graded activities throughout the course. In these documents, the students' names were not provided, but each student was assigned a number and that same number was used for the same student across each report provided to the plaintiff.

([Filing No. 81 at 2.](Filing No. 81 at 2.)) FERPA provides that personally identifiable information from a student's record may not be disclosed unless there is written consent from the student's parents specifying records to be released, the reasons for release, and to whom, or if such information is furnished in compliance with judicial order, or pursuant to any lawfully issued subpoena. 20 U.S.C. § 1232g. FERPA also provides, at 34 CFR 99.31 (b), that "De-identified records" may be released without the required consent "after removal of all personally identifiable information".

Wanko requests a court order entitling her to the release of the personally identifiable information associated with each student's record. ([Filing No. 83 at 5.](Filing No. 83 at 5.)) Wanko explains that she has a genuine need for the actual student records because the identifiable student information is needed to prosecute Wanko's race discrimination case, which requires her to establish which of the similarly- situated Caucasian students failed STI, but were still promoted to second year. *Id.* at 5-6. Indiana University responds that it has repeatedly answered Wanko's interrogatories (Interrogatory Nos. 3, 7, 9, 10, 22, and 15) that no Caucasian students failed or received an incomplete in STI in the spring of 2015. ([Filing No. 84 at 2-3.](Filing No. 84 at 2-3.)) As noted previously, the only other student who failed STI in the spring of 2015, in addition to Wanko, was another African

6

American female student. Additionally, Indiana University explains that it provided Wanko de-identified records for each of the 106 students in Wanko's class of 2018, by an assigned number, to preserve each student's privacy rights pursuant to FERPA. ([Filing No. 84 at 6.](#)) In addition, Indiana University produced documents, by assigned numbers (but not by name), for all one hundred and six (106) students in Wanko's graduating class of 2018 for all classes including quizzes and test, GPAs, and identified the students by gender and race.

The Magistrate Judge reasonably concluded that the assigned numbers for each student's grades data/GPA/race and gender information for every student, including those that repeated RP and STI, was a sufficient production in denying Wanko's second bite at the apple pursuant to a written motion to compel. ([Filing No. 81 at 3.](#)) Moreover, Indiana University correctly notes the higher burden of establishing a genuine need to access personally identifiable student records under FERPA. "[T]he Congressional policy expressed in this provision places a significantly heavier burden on a party seeking access to student records to justify disclosure than exists with respect to discovery of other kinds of information, such as business records." *Rios v. Read,* 73 F.R.D. 589, 598 (E.D.N.Y. 1977).

Wanko also contends that the Magistrate Judge did not consider issues with the veracity of Indiana University's document production. Wanko argues that she specifically pointed out, to the Magistrate Judge, an individual comparator voluntarily identified by Indiana University, *before discovery*, which contradicted Indiana University's later assertion that Wanko was the *only* student to fail STI. ([Filing No. 65-1](#); [Filing No. 83 at 7.](#)) Indiana University acknowledges that it identified a "Student 2", by email, as the only possible comparator, as only two students failed STI, including Wanko. ([Filing No. 65-1.](#)) This same student was subsequently identified as "Student 57" in the discovery responses that followed the email, *i.e.,* "Student 2/57". ([Filing No. 71-1 at 2.](#)) Student

7

2/57 is the other African-American female, noted previously, that failed STI. Student 2/57 successfully remediated STI (and RP) and was promoted to D-2, whereas Wanko did not successfully remediate STI and remained in D-1. *Id.* After successful remediation, Student 2/57's STI grade converted to a C-, pursuant to IUSD's policies. *Id.* at 3. The Magistrate Judge stated that she accepted Indiana University's explanation for the discrepancy. ([Filing No. 81 at 3](#).) Wanko has not presented any evidence to disturb this finding. In fact, the evidence reveals that Wanko understandably may have been confused over Student 2/57's identity, due to the different de-identified numbers used, but it is now clear that Student 2/57 is the same person, as there is only one other student who failed STI, another African-American female student.

The Court finds that student names are not relevant to Wanko's discovery request, as she has been provided the essential demographic information for each student with their corresponding grades data and GPAs. Wanko has also been provided demographic data for all of the students who failed or received an incomplete in STI and/or RP. Having student names will not provide Wanko with any additional information that she is not already privy to, but would infringe on student privacy under FERPA. Accordingly, the Court finds no error in the Magistrate Judge's Order and **overrules** Wanko's objections.

**B.    Motion under Rule 56(d)**

On February 6, 2018, Indiana University moved for summary judgment. ([Filing No. 87](#).) Wanko contends that she was blindsided by Indiana University's summary judgment motion, filed after the Court's dispositive motion deadline of January 31, 2018, and requests that this Court defer or deny considering Indiana University's Motion for Summary Judgment, pursuant to Rule 56(d) until this Court rules on all outstanding pending motions for discovery. ([Filing No. 92 at 3](#).) On February 27, 2018, at the request of Indiana University, the Magistrate Judge deemed its Belated

Motion for Summary Judgment timely ([Filing No. 96](#)), finding that extending the dispositive motion deadline by six days is a *de minimus* extension. ([Filing No. 96 at 2](#).) Wanko correctly notes there were outstanding discovery disputes in this matter; however, at no point did Wanko request a stay. Moreover, the Magistrate Judge noted that it was Wanko who cancelled depositions and did not respond to Indiana University to reschedule the depositions, contributing to the untimely completion of discovery before the dispositive motion deadline that had been set. ([Filing No. 96 at 2-3](#).)

In *Grundstad v. Ritt*, the Seventh Circuit held that vague assertions that discovery would develop genuine issues of material fact was insufficient to grant continuance. *Ritt*, 166 F.3d at 873. "As we have said before, "[a] party who has been dilatory in discovery may not use Rule 56(f) to gain a continuance where he has made only vague assertions that further discovery would develop genuine issues of material fact. *Id.* (quoting *United States v. Bob Stofer Oldsmobile-Cadillac*, 766 F.2d 1147, 1153 (7th Cir. 1999)). Having ruled on the outstanding objection to the Magistrate Judge's Order, there are no pending discovery motions. Moreover, this ruling constitutes the third unsuccessful request by Wanko to order Indiana University to identify student records by names, which are arguably irrelevant to her case. Accordingly, Wanko has not shown good faith as to why she cannot respond to Indiana University's Motion for Summary Judgment, and the Court denies Wanko's Rule 56(d) Motion. Wanko requests that the Court treat her Motion for Continuance under Rule 56(d) as her response to Indiana University's Motion for Summary Judgment. ([Filing No. 95 at 2](#).) The Court notes that Wanko's Rule 56(d) Motion does not address the merits of Indiana University's Motion for Summary Judgment. Nevertheless, the Court moves on to address Indiana University's Motion as there are no disputed material facts.

C.  **Summary Judgment**

To establish a *prima facie* case of discrimination under Title VI, Wanko must demonstrate that she: (1) is a member of a protected class; (2) met the school's legitimate educational expectations; (3) suffered an adverse educational action; and (4) received worse treatment than that of similarly situated students not in the protected class. *Brewer v. Board of Trustees of the University of Illinois*, 479 F.3d 908, 921 (7th Cir. 2007) (citations omitted).

The parties agree that, pursuant to this Court's Entry on Indiana University's Motion to Dismiss, the sole remaining theory in this case is whether Wanko can prove she was discriminated against when she was required to retake her first year curriculum, and others similarly situated outside of her protected class, who failed courses during their first year, were not required to repeat the year but were instead promoted to the second year on probation. ([Filing No. 88 at 1](#); [Filing No. 83 at 3](#).) Indiana University does not dispute that Wanko is a member of a protected class, or that she suffered an adverse educational action. However, Indiana University argues that Wanko did not perform satisfactorily at IUSD to meet its legitimate expectations, and there is no similarly situated student outside of the protected class who was treated more favorably.

At the motion to dismiss stage, the Court was required to accept the factual allegation as true, that two to three Caucasian students who also failed STI during their first year were not required to repeat the first year. Wanko testified that the course director for STI, Dr. Reifeis, told her that two to three students would be repeating his course, but he did not reveal the demographics of those students. ([Filing No. 88-3 at 2](#).) As noted previously, the designated evidence is that two students failed both STI and RP. Wanko was one of those two students, and the other student was an African-American female as well. ([Filing No. 88-1 at 3](#).) Thus, Wanko and the other student who failed both STI and RP are from the same protected class. While there were Caucasian

10

students who failed RP, those students successfully remediated RP and were eligible for promotion to second year. *Id.* Moreover, the fatal blow to Wanko's position is that she is in a class of one, as she was the only student who was not successful at remediating either STI or RP. ([Filing No. 66-2](#).) The other African-American female student successfully remediated RP, allowing her to complete STI in the spring of 2016 in her second year.[2] Due to the school's lock-step curriculum, Wanko could not move forward with the second RP course in the fall, without passing the first RP course. Having failed at remediation of RP in the summer of 2015, the course was not offered again until the spring of 2016. ([Filing No. 88-1 at 3](#).) IUSD reasonably concluded that both Wanko and the public, whom she might eventually treat, would best be served by requiring Wanko to repeat the first year to gain a more solid foundation of the curriculum before moving to D-2. ([Filing No. 88-1 at 2-3](#).)

Because Wanko's case fails at the *prima facie* stage due to lack of a presentation of any similarly-situated students outside of her protected class who failed both STI and RP, as well as having a GPA below 2.0, the Court **grants** Indiana University's motion for summary. Wanko was the only student required to re-take the first year, pursuant to the academic rules and standards of IUSD, because she was the only student who failed to successfully remediate either STI or RP, in addition to having a GPA below 2.0.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Indiana University's Motion for Summary Judgment, ([Filing No. 87](#)), is **GRANTED** on all claims asserted by Wanko. Wanko's Objection to the Magistrate Order Granting in Part, Denying in Part an Extension of Discovery and Order Denying the Motion to Compel, ([Filing No. 83](#)), is **OVERRULED**, and her Corrected Motion to Defer or Deny

---

[2] Unlike Wanko, the other African-American female student also had a GPA over 2.0, making her eligible for promotion to second year. ([Filing No. 88-1 at 3](#).)

Summary Judgment and/or Time to Conduct Discovery, and/or For Any Other Relief Pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, ([Filing No. 92](#)), is **DENIED**. The Court will issue Final Judgment under separate order.

    **SO ORDERED.**

Date: 7/30/2018

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Clifton A. Dennis
SEVERNS & STINSON
clifton@cliftondennis.com

Ikechukwu Emejuru
EMEJURU & NYOMBI LLC
iemejuru@enylaw.com

Andrew Nyombi
EMEJURU & NYOMBI LLC
anyombi@enylaw.com

Cory Stephen Brundage
CORY BRUNDAGE, LLC
cb@brundagelaw.com